IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CURTIS RACKLEY; ROSS & LINDSEY ) <br> SMITHERMAN; JESSIE & TERESA  ) <br> HOLYFIELD; BOB & DEBRA PARKER, ) <br> ) <br>     Plaintiffs,               ) <br> ) <br> v.                                              ) <br> ) <br> AMERIQUEST MORTGAGE COMPANY, ) <br> INC.,                                  ) <br> ) <br>     Defendant.              ) | CASE NUMBER: 1:07-cv-00748-CG-M |

## **PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

**COME NOW** Plaintiffs and file the following response to the defendant's motion to dismiss:

## **INTRODUCTION AND SUMMARY**

This action arises from several violations of the federal Truth in Lending Act ("TILA") which occurred in connection with all the named plaintiffs' mortgage loans with Ameriquest Mortgage Company (AMC). At the heart of plaintiffs' claims is the right to cancel a loan transaction which is provided under TILA.  Attendant to that right is the explicit duty of a lender to "clearly and conspicuously" disclose this right, including the date upon which the right to cancel expires.  AMC failed to comply with that duty by providing only blank and undated copies of the notice to the plaintiffs regarding their loan and did not provide the statutorily required number of the right to cancel notice regarding the loans.  As a result of these failures, the cancellation periods never expired and plaintiffs effectively cancelled their loans within the three year rescission period.

1

After rescission by the plaintiffs, AMC failed to take the required action in recognition of the rescissions. This is a new and further violation of TILA. A claim for this TILA violation is clearly stated in the Complaint. Furthermore, the claims arising from these violations are not time-barred for at least three reasons. First, the statute of limitations for a TILA rescission claim is three years. Second, the claims herein have been tolled by several class actions making similar claims and in which plaintiffs are putative class members. Finally, the claims are also the subject of an action by the attorneys general of 49 states and are therefore tolled by the provisions of 15 U.S.C. § 1635(f). The Motion to Dismiss is totally without merit and is due to be denied.

## ARGUMENT

**A.    RESCISSION UNDER TILA**

    **1.    The Consumer's Right to Rescind**

At the closing of the plaintiffs, the lender's signing agent left with the plaintiffs undated right-to-cancel notices. The plaintiffs' copies, with blank spaces instead of the signing and cancellation dates, are attached hereto as **EXHIBIT "A."** The issues presented are whether the rescission notice mandate of TILA has been followed when the consumers are given undated right to cancel notices and are not given the requisite number of copies.

TILA provides a consumer a three-day right to cancel certain types of real estate loan transactions. This right to cancel is set out in 15 U.S.C. §1635(a), which provides as follows:

> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and <u>rescission</u> forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is*

*later,* by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall *clearly and conspicuously* disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. *The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.*

15 U.S.C. § 1635(a)(emphasis added).

As is plainly provided in this section, the three-day cancellation period begins upon the later of the following events: (1) the "consummation of the transaction;" (2) the "delivery of the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA. 15 U.S.C. § 1635(a). Semar v. Platte Valley Fed. Sav. & Loan Ass'n., 791 F.2d 699, 702 (9th Cir. 1986); Williamson v. Lafferty, 698 F.2d 767, 769 (5th Cir. 1983); Reynolds v. D & N Bank, 792 F. Supp. 1035, 1038 (E.D. Mich. 1992).

### 2. The Required Notice of the Consumer's Right to Cancel and the Extended Right to Cancel.

The Federal Reserve Board's regulations implementing TILA ("Reg. Z") provide the rules governing the notice which must be given each borrower regarding the right to rescind. Those rules appear at 12 C.F.R. § 226.23(b) and state as follows:

(1) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver ***two copies*** of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall *clearly and conspicuously* disclose the following:

   (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

   (ii) The consumer's right to rescind the transaction.

>    (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
>    (iv) The effects of rescission, as described in paragraph (d) of this section.
>
>    (v) ***The date the rescission period expires.***

(2) Proper form of notice. To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice. 12 C.F.R. § 226.23(b)(emphasis added).

Failure to deliver the requisite form <u>or number of copies</u> of the notice of the right to cancel extends the period for rescission for up to *three years.* 15 U.S.C. § 1635(f); <u>Semar v. Platte Valley Fed. Sav. & Loan Ass'n.</u>, 791 F.2d 699, 702 (9th Cir. 1986); <u>Williamson v. Lafferty</u>, 698 F.2d 767, 769 (5th Cir. 1983); <u>Reynolds v. D & N Bank</u>, 792 F. Supp. 1035, 1038 (E.D. Mich. 1992)(emphasis added).

> Under the Truth in Lending Act, 82 Stat. 146, <u>15 U.S.C. § 1601</u> *et seq.,* when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately. See <u>15 U.S.C. § 1635</u>. Under <u>§ 1635(f)</u> of the statute, this right of rescission "shall expire" in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier.
>
> <u>Beach v. Ocwen Federal Bank</u> 523 U.S. 410, 118 S.Ct. 1408

A consumer has up to three years to rescind her loan. See *Beach* supra. The Complaint alleges two separate sets of TILA violations: (1) violations arising from AMC's failure to take the actions required by Section 1635(b) after receipt of the notice of plaintiffs' decision to cancel; and (2) violations arising from AMC's failure to give proper notice of plaintiffs' right to cancel and failure to properly disclose the finance charges imposed. The first set of violations occurred at the time of the various closings of the plaintiffs and the second set occurred when

AMC failed to rescind the plaintiffs' loans. A creditor's failure to comply with its obligations upon rescission is a separate violation of TILA, entitling the consumer to damages provided under Section 1640(a). Williamson, 698 F.2d. at 768; Egipciaco Ruiz v. R & G Financial Corporation, 313 F.Supp.2d at 50-51 (D.P.R. 2004); Mount v. LaSalle Bank Lake View, 886 F. Supp. at 651 (N.D. Ill. 1995). These violations occurred after AMC responded to the notice of plaintiff's decision to cancel the loans. Plaintiffs' notices were proper and the notices informed AMC of the plaintiffs' right to rescind their loan transactions. **(EXHIBIT "B")** AMC responded to the plaintiffs and rejected their right to rescind the loans. **(EXHIBIT "C")** Therefore, the violation for failure to comply with Section 1635(b) occurred after AMC's failure to comply with TILA. This Complaint was filed immediately after AMC's denial to rescind the loans. The claim is not time barred. Id.

The disclosure and notice violations occurred at the closings and prior to the filing of this Complaint. A claim for those violations is not time-barred for several reasons. First, as stated above the statute of limitations for rescission claims is three years. Second, plaintiffs TILA claims are subject to equitable tolling. Ellis v. General Motors Acceptance Corp., 160 F.3d 703 (11th Cir. 1998).[1] The second reason claims, including those giving rise the right of rescission, are tolled is because those claims are involved in at least one of several class action pending against AMC. It is settled law that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554 (1974); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983). See

---

[1] Plaintiffs acknowledge that under Beach the "right of rescission 'shall expire' in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier." (emphasis added)

also, <u>Andrews v. Chevy Chase Bank,</u> 243 F. R. D. 313 Ed. Wis., 2007. At least the following class actions[2] have been filed and are currently pending with class allegations of incomplete right-to-cancel notices:

- <u>Knox et al., v Ameriquest et al.,</u> CV-05-240 U.S. District Court for the Northern District of California—San Francisco Division, filed on January 14th 2005[3];

- <u>Williams et al., v. Ameriquest et al.,</u> CV-05-6189 U.S. District Court for the Southern District if New York, filed on July 1st 2005[4];

- <u>In Re Ameriquest Mortgage Co., Mortgage Lending Practices Litigation</u> MDL-1715, Lead Case 05-7090, U.S. District Court for the Northern District of Illinois, filed December 6th 2006[5].

Finally 15 U.S.C. 1635(f) states in pertinent part:

> (f) Time limit for exercise of right
>
> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if
> (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction,
> (2) such agency finds a violation of this section, and
> (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire

---

[2] Both the <u>Knox</u> and <u>Williams</u> cases have been transferred to the MDL for coordinated proceedings.
[3] A copy of the original complaint in <u>Knox</u> is attached hereto as Exhibit "D".
[4] The original complaint in <u>Williams</u> is attached here to as Exhibit "E".
[5] This complaint is also attached hereto as exhibit "F".

>three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

Filed herewith is the final order out of the Superior Court of California, Alameda County. In this case 49 of the country's states and attorneys general, including Alabama's, participated. **(Exhibit "G")**. The order was entered in March 21st 2006 and is still being administered. See http://www.ameriquestmultistatesettlement.com. By operation of § 1635(f) AMC's customers would have "one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later." Therefore, the plaintiffs' claims are not time barred as AMC suggests. Unfortunately, although AMC knows this, it has seen fit to file the instant motion to dismiss and brief anyway.

Since the plaintiff's claims are time barred, the next issue is whether or not a blank or undated notice of right to cancel is considered a proper disclosure under TILA. The Fifth Circuit has addressed on point this very fact situation of a consumer being provided with a blank notice of right to cancel. In <u>Williamson v. Lafferty</u>, 768-769 (5th Cir. 1983), the court held that the failure to date the Notice of Right to Cancel was an "automatic violation" of TILA which gave the borrower an unqualified right to cancel:

>"Under § 1635(a) of the TILA, the failure properly to complete the right to rescission form <u>automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made</u>. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). <u>The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA</u>. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction."

In another Fifth Circuit case, Taylor v. Domestic Remodeling, 97 F.3d 96 (5th Cir. 1996), the defendant lender's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3). The Fifth Circuit is not alone in holding that a consumer has an extended right to cancel if the consumer's Notice of Right to Cancel form is not dated. In Palmer v. Champion Mortg., 465 F.3d 24, 29 (1st Cir. 2006), the Court distinguished a technical attack on a "right to cancel" notice from an attack on a notice which states "no rescission deadline whatsoever," and acknowledged various authorities holding that complete failure to date entitles borrower to rescind for period of 3 years. *See., e.g.,* Semar v. Platte Valley Fed. Sav. & Loan Ass'n., 791 F.2d 699, 702 (9th Cir. 1986); Reynolds v. D & N Bank, 792 F. Supp. 1035, 1038 (E.D. Mich. 1992); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003).

AMC is fully aware that it is required to comply *strictly* with the TILA requirement of providing the consumer with "properly completed" Notice of Right to Cancel forms. Its own closing instructions at Section 5.5, specifically emphasize the critical importance of the signing agent dating the consumer's right to cancel:

> A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel. The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of' must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed</u> or amended prior to signature. Settlement Agent must contact the Lender to confirm that the correct dates are used. <u>You must provide each Borrower, owner and any required spouse with two (2) copies of the One Week</u>

<u>Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party</u>.

(Attached hereto as **EXHIBIT "H"**)

As stated above, an MDL is pending over these very issues in the United States District Court for the Northern District of Illinois, Eastern Division, <u>In Re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation,</u> MDL No. 1715, Lead Case No. 05-CV-7097. In the MDL, the court recently entered an order granting injunctive relief, and described the litigation as follows:

> Plaintiffs allege that Ameriquest violated certain disclosure provisions of the Truth in Lending Act ("TILA") and its implementing regulations ("Regulation Z"). *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23. First, Ameriquest purportedly provided incomplete Notice of Right to Cancel forms ("NORTC") to borrowers. Specifically, Ameriquest delivered NORTCs that failed to identify the deadline upon which the borrower could rescind the transaction. Second, Plaintiffs claim that Ameriquest provided the wrong form to refinancing borrowers. Rather than using the H-9 form recommended in Regulation Z, Ameriquest gave borrowers an H-8 form, which allegedly is not approved for refinancing disclosures. Plaintiffs argue that these failures to comply with TILA constitute material violations entitling affected borrowers to cancel their mortgages for up to three years from the date of the transaction.1 *See* 15 U.S.C. § 1635(h); 12 C.F.R. § 226.23(a)(3). If a borrower rescinds a mortgage, he or she is no longer responsible for finance or other charges, and the lender loses its security interest. 15 U.S.C. § 1635(b). As such, proper and timely rescission of a mortgage derails a foreclosure action. Once a foreclosure sale is completed, however, a borrower can no longer cancel the mortgage. 15 U.S.C. § 1635(f). Thus, Plaintiffs contend, certain Ameriquest borrowers facing foreclosure may unknowingly be entitled to extended rescission rights but lose their defense if they fail to act prior to the impending property sale. <u>Ameriquest apparently does not dispute Plaintiffs' description of TILA rights and remedies</u>, or the fact that certain borrowers may lose their homes despite having extended rescission rights. Nevertheless, it opposes the notice sought by Plaintiffs on several other grounds, addressed in turn below.

(Memorandum Opinion and Order, Court Doc. 143)(emphasis added)

Additionally, the court stated that the fact that Ameriquest has a dated Notice of Right to Cancel in its file is not conclusive or even sufficient summary judgment proof that the consumer received a dated Notice of Right to Cancel:

> Ameriquest mistakenly suggests that these completed forms with signed acknowledgments foreclose the possibility of Plaintiffs' success. To the contrary, TILA states that a written acknowledgment "does no more than create a rebuttable presumption of delivery." 15 U.S.C. § 1635(c); *see Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1129 (N.D. Ill. 2004). <u>Borrowers can attempt to overcome this presumption with testimony about their closings and what documents they received (or did not receive), as well as by presenting copies of NORTCs from their own records</u>. *Briggs*, 349 F. Supp. 2d at 1129; *see also Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F. Supp. 2d 50, 63-65 (D.D.C. 2002); *In re Rodrigues*, 278 B.R. 683, 687-688 (Bankr. D.R.I. 2002). Although such conflicting evidence may not be sufficient to warrant summary judgment for either party, the existence of signed acknowledgments in Ameriquest's files certainly does not preclude Plaintiff's eventual success on the merits.

(Id.)

Doubtless, AMC would prefer to dispense with the strict procedural formalities imposed by Congress in TILA as well as the applicable TILA provisions of the Code of Federal Regulations. However, the United States Supreme Court noted, in <u>Mourning v. Family Publ'ns Serv.</u>, 411 U.S. 356, 377 (U.S. 1973), that the Truth in Lending Act reflects a transition in congressional policy from a philosophy of "Let the buyer beware" to one of "Let the seller disclose." By erecting a barrier between the seller and the prospective purchaser in the form of hard facts, Congress expressly sought "to . . . avoid the uninformed use of credit." 15 U. S. C. § 1601. The Court cautioned that "[i]t is not a function of the courts to speculate as to whether the statute is unwise or whether the evils sought to be remedied could better have been regulated in some other manner." <u>Mourning v. Family Publ'ns Serv.</u>, 411 U.S. 356, 378 (U.S. 1973). Similarly, the Eleventh Circuit has noted, in <u>Shroder v. Suburban Coastal Corp.</u>, 729 F.2d 1371, 1380 (11th Cir. 1984), the necessity of making TILA "disclosures in the proper technical form

and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z," and further noting that "[l]iability will flow from even *minute* deviations from requirements of the statute and Regulation Z.". (emphasis added)[6]

There is a "rebuttable presumption" that the plaintiff was given notice of the right to cancel written into the TILA statute. *See* 15 U.S.C. §1635(c). Borrowers can overcome this presumption with testimony about their closing and what documents they received, or did not receive, as well as by presenting copies of the Notice of Right to Cancel from their own records. Briggs v. Provident Bank, 349 F. Supp. 2d at 1124 (N.D. Ill. 2004); see also Cooper v. First Gov't Mortgage & Investors Corp., 238 F. Supp. 2d 50, 63-65 (D.D.C. 2002); In re Rodrigues, 278 B.R. 683, 687-688 (Bankr. D.R.I. 2002). Thus, the existence of a signed[7] form in AMC's filed does not necessitate a dismissal as argued by AMC. If it did, lenders could completely skirt their obligation to *deliver* the required notices by simply keeping a signed copy in their files and leaving the borrowers with blank notices – which is exactly what AMC did in this case.[8] Obviously, such a tactic would contravene the basic purpose of the TILA rescission right.

---

[6] In Kitchen v. Ameriquest, at 11-12, 2005 U.S. Dist. LEXIS 43937 (11th Cir. 2006), Ameriquest argued that the standard set in Smith v. Chapman, 614 F.2d 968 (5th Cir. 1980) is that strict compliance with TILA does not mean punctilious compliance if there is still a substantial, clear disclosure. Ameriquest stated this is the approach the court should take. However, the court in Kitchen disagreed and followed its reasoning under Shroder to find strict compliance with TILA.

[7] Ameriquest states in its brief "Plaintiffs in this case apparently **do not dispute the authenticity** of their respective acknowledgments.", relating to the NOTICE OF RIGHT TO CANCEL forms, (AMC. BR at 8). This is untrue. The Plaintiffs have not had any opportunity to examine the copies of the RTC notices in Ameriquest's possession and do not concede their authenticity.

[8] To give the Court a preview of what Plaintiff expects the evidence to show, attached hereto as **EXHIBIT "I"** are 41 similar "blank" notices which were provided to other borrowers by AMC. Most of these are plaintiffs in cases already filed against AMC for the same TILA

Plaintiff has attached hereto as **EXHIBIT "A"** copies of what she received at the time of loan closing. The Notice of Right to Cancel was blank, as there were no dates placed into the lines provided. Contrary to the Defendant's assertions, the plaintiffs do not have to discover the disclosure failures at the time of the closing. In <u>Davidson v. Bank One Home Loan Services</u>, F.Supp.2d, 2003 WL 124542 at 4 (D.Kan. 2003), the plaintiffs did not discover the violation until they met with their attorney some two years later.

> Plaintiffs concede that because they signed acknowledgments that they each received two copies of the right to cancel form and one copy of the TILA disclosure form, TILA provides a rebuttable presumption of delivery. For purposes of defendant's motion for summary judgment, however, plaintiffs have presented sufficient evidence to rebut that presumption. As explained above, plaintiffs retained their copies of the loan documents in a notebook which they placed in a file cabinet in their home. The documents remained intact from the date of the loan closing on August 27, 1999 until Mrs. Davison removed them from the file cabinet shortly before she met with counsel in late 2001. During plaintiffs' meeting with their attorney, they discovered that they had received a total of two copies of the right to cancel form and a total of one copy of the TILA disclosure form. Viewing the evidence in a light most favorable to plaintiffs, a reasonable jury could find that they did not receive a total of four copies of the right to cancel form or a total of two copies of the TILA disclosure form. See *Cooper v. First Gov't Mortgage & Investors Corp.*, 2002 WL 31520158, at *11-13 (D.D.C. Nov. 4, 2002) (presumption rebutted by borrower's testimony that she did not read documents at closing, but placed them in "lockbox" shortly thereafter, and when she later reviewed them, required number of copies were not present); *Hanlin v. Ohio Builders & Remodelers, Inc.*, 212 F.Supp.2d 752, 762 (plaintiffs' testimony that they did not receive disclosures sufficient to rebut presumption); *Stone*, 728 F.Supp. at 1353-54 (same); *In re Rodrigues*, 278 B.R. at 687 (same); *In re Williams*, 232 B.R. at 641 (same), aff'd in relevant part, 237 B.R. 590, 594-95 (E.D.Pa .1999); see also *Cooper*, 2002 WL 31520158, at *11-13 (TILA plaintiff attempting to overcome presumption faces low burden). But see <u>Gaona v. Town & Country Credit</u>, 2001 WL 1640100, *3 (D.Minn. Nov. 20, 2001) (affidavits that required number of copies are not now in closing folder is

---

violations alleged here. Each of these borrowers can attest that they received only these blank notices. This demonstrates that the failure to provide the plaintiffs with completed notice was not the result of some isolated, inadvertent oversight; it is part of a wide-spread pattern of noncompliance and reflects a policy adopted by AMC in direct conflict with the express requirements of TILA.

insufficient to rebut presumption created by signed acknowledgments).  The Court therefore overrules Mortgage Plus' motion for summary judgment on this issue.

Additionally, it should be noted that it would be incorrect to assume that a borrower, when provided a blank notice of right to cancel, could calculate the last date of rescission on her own.  Although blank notices might, as in this case, state that the rescission period extends "three business days" after the loan signing date, the TILA definition of a "business day" does not match the common understanding of that term as including Monday through Friday.  Under TILA, the "business day" for purposes of rescission includes every calendar day, except Sunday and certain holidays specifically listed in 5 U.S.C. § 6103(a). 12 C.F.R. § 226.2(a)(6).  Thus, the three-day period would include Saturdays but not Sundays.  It would also exclude only those statutorily listed holidays.  In light of this counter-intuitive definition of "business day," it is easy to see the importance of providing an *actual date* in the notice.  A consumer would have to be well versed in TILA and Reg. Z to be able to accurately calculate the rescission period using only the loan date.  This difficulty was recognized by the Fifth Circuit which noted that the "precise purpose" of requiring the creditor to fill out the actual date of the cancellation deadline is to prevent the consumer from having to calculate on her own when the three "business day" period expires. Williamson, 698 F.2d 767, n. 3.

Finally, the allegations concerning the blank "One Week" notice received by the plaintiffs likewise state a viable TILA claim.  Courts have held the "3 Day" vs. "One Week" cancellation notices to be confusing and contradictory as well.  Notice of consumer's three-day rescission right under the Federal Truth in Lending Act (TLA) must be both clear and conspicuous, and must not be contradicted by any confusing or misleading provisions. Truth in Lending Act § 125, Mount v. LaSalle Bank Lake View, N.D. Ill.1996, 926 F.Supp. 759

13

AMC has been subjected to liability on this very point. The court in Washington v. Ameriquest Mortg. Co., 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), stated as follows:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in Handy v. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a three-day notice and a one-week notice creates inconsistency regarding the right to cancel. In Porter v. Mid-Penn Consumer Disc. Co., 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrower, the court noted that, "where more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails." Id. "The [borrower] shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section ... whichever is later ..." 15 U.S.C. § 1635(a) (2000). The lender must provide each customer entitled to rescind with two copies of the notice of the right to rescind. 12 C.F.R. § 226.15(b) (2002). This notice should include the date that the rescission period ends. 12 C.F.R. § 226.15(b)(5). Gaona v. Town & Country Credit 324 F.3d 1050.

### 3. The Procedure for Rescission

A consumer may exercise her right to cancel a transaction by delivery of a written notification of the consumer's wish to cancel the transaction to the creditor's place of business. Notice is effective upon mailing. 12 C.F.R. § 226.23(a)(2). The lender's obligations upon rescission are set out in TILA Section 1635(b) which provides as follows:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b); see also 12 C.F.R. § 226.23(d).

As this statutory language makes clear, the creditor is obligated to take "necessary appropriate" actions to reflect the cancellation of the mortgage upon receipt of the notice of the election to cancel. The creditor has 20 days in which to take those steps and it obligation to do so is not pre-conditioned on the borrower's duty to reasonably tender. Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Palmer v. Wilson, 502 F.2d 860, 861 (9th Cir. 1974); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Brown v. National Permanent Federal Savings & Loan Ass'n, 683 F.2d 444, 447 (D.C.Cir.1982) (creditor must tender before the borrower's obligation arises);Mitchell v. Security Investment Corp. of Palm Beaches, 464

F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the creditor cancels the mortgage).

Section 1635(b) places upon the creditor requirements separate and distinct from those which arise upon the consummation of the loan. The creditor's failure to comply with these requirements is a separate violation of TILA, entitling the consumer to damages provided under Section 1640(a). Williamson, 698 F.2d. at 768; Mount, 886 F. Supp. 650, 651. The violation arising from a failure to properly respond to a notice of rescission takes place 20 days after the date of consumer's notice of the rescission. Ruiz, 313 F.Supp.2d 48, 50-51. For purposes of TILA's one-year statute of limitations, a claim for relief based on this violation is timely if filed within a year after the end of the 20-day period provided in Section 1635(b). Id.

In the present case, the plaintiffs rescinded their loan within the allotted time under TILA and AMC subsequently denied their request. Under 12 CFR 226.23(2), AMC has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest.[9] The Seventh Circuit has summarized the borrower's remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $ 200 or greater than $ 2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fee," §

---

[9] 12 CFR 226.23 provides: "(d) Effects of rescission. (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest."

>    1640(a)(3). In addition, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

Handy v. Anchor Mortg. Corp., 464 F.3d 760, 765 (7th Cir. 2006).

In McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. Id. See, also, Mount v. LaSalle Bank Lake View, 886 F. Supp. 650, 651 (N.D. Ill. 1995); Elliott v. ITT Corp., 764 F. Supp. 102, 106 (N.D. Ill. 1991); Malfa v. Household Bank, F.S.B., 825 F. Supp. 1018, 1020 (S.D. Fla. 1993)); Washington v. Ameriquest Mortg. Co., 2006 U.S. Dist. LEXIS 50804, 26-27 (D. Ill. 2006).

Finally, AMC argues that because the security interest was already terminated on two of the plaintiffs' loans prior to rescission, this somehow voids their rescission rights. This is simply not supported by the majority of the courts. The main case AMC cites, King vs. California, 784, F.2d 910 (9th Cir. 1986) has been rejected by the DC and Sixth Circuits with it simplistic analysis that states there is nothing to rescind. In Duren v. First Gov't Mortgage and Investors Corp., 2000 U.S. App. LEXIS 15469 (D.C. Cir. June 7, 2000), the Court disagreed with the defendant's contention that the refinancing of the plaintiff's loan rendered TILA's statutory rescission remedy unavailable, "notwithstanding the Ninth Circuit's terse suggestion to the contrary in King…" Additionally, in Barrett v. JP Morgan Chase Bank, 445 F.3d 874, 879 (6th Cir. 2006), the Court failed to follow the King decision in finding that mortgagors did not extinguish their

right to rescind loan transactions when they refinanced them.[10] The King court overlooked the fact that TIL rescission does not only cancel the security interest in the property, it also cancels *any* liability for the consumer to pay finance and other charges, including accrued interest, points, broker fees and closing costs. This amounts to thousands of dollars in fees and costs that are due back to the plaintiff. Therefore, AMC must return those charges to the consumer, or credit their account. Pulphus v. Sullivan, 2003 WL 1964333 at 17 (N.D. Ill. Apr 28, 2003); McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26 (D. Mass. 2003); Barrett, 445 F.3d at 874. Finally, a number of bankruptcy court decisions have permitted refinanced loans to be rescinded, as long as the loans fell within the three year statutory period, as does the plaintiffs. McKenna v. First Horizon Home Loan Corp., 429 F. Supp. 2d 291 (D. Mass. 2006); Payton v. New Century Mortgage Corp., 2003 WL 22349118 (N.D. Ill. Oct 14, 2003); Nichols v. Mid-Penn Consumer Discount, 1989 WL 46682 (E.D. Pa. Apr. 28 1989), *aff'd without opinion,* 893 F.2d 1331 (3rd Cir. 1989); Mayfield v. Vanguard Savings & Loan Ass'n, 710 F. Supp. 143 (E.D. Pa. 1989); Abele v. Mid-Penn Consumer Discount, 77 B.R. 460, 467 (E.D. Pa. 1987), *aff'd mem.*, 845 F.2d 1009 (3rd Cir. 1988); In re Steinbrecher, 110 B.R. 155 (Bankr. E.D. Pa. 1990); In re Milbourne, 108 B.R. 522 (Bankr. E.D. Pa. 1989); Wiggins v. Avco Fin. Servs., 62 F. Supp. 2d 90 (D.D.C. 1999); In re Tucker, 74 B.R. 923 (Bankr. E.D. Pa. 1987); Pac. Shore Funding v. Lozo, 42 Cal. Rptr. 3d 283, 291 (Cal. Ct. App. 2006).

## CONCLUSION

The Complaint clearly defines the legal requirements that plaintiffs claims apply to their

---

[10] The Court in its discussion cites numerous court opinions that specifically failed to follow King simply because the analysis was virtually nonexistent.

loans and the acts and omissions made by AMC which plaintiffs allege violates those requirements. As stated, the failure to provide the completed notices of the three-day cancellation period is a blatant violation of TILA's requirement that the rescission right and period be "clearly and conspicuously" disclosed. Reg. Z 226.15(b) requires two completed copies of the RTC notice, both TILA and Reg. Z clearly require that the specific end date of the cancellation period be provided and the Complaint alleges that AMC did not provide proper notice. Plaintiffs' allegations easily meet the notice pleading requirements applicable to these claims and AMC has been provided more than "fair notice" of the nature of the claims and the supporting facts. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985)(Under notice pleading, plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests).[11]

The foregoing demonstrates that AMC's motion to dismiss and/or motion for summary judgment is due to be denied based on both statutory law and case law.

Respectfully submitted November 14th, 2007.

> s/ James D. Patterson
> James D. Patterson (PATTJ6485)
> Earl P. Underwood, Jr. (UNDEE6591)
> Law Offices of Earl P. Underwood, Jr.
> Post Office Box 969
> Fairhope, AL 36533-0969
> 251-990-5558 (voice)
> 251-990-0626 (fax)
> jpatterson@alalaw.com
> epunderwood@alalaw.com

---

[11] The tone and substance of Defendant's brief seem to presume that some heightened standard of pleading applies to Plaintiff's claims. However, no citation or argument is given to support such a position. Certainly, these claims do not fall within the category of claims subject to the heightened standard set out in Rule 9(b) of the Federal Civil Rules of Procedure. That said, plaintiff stands ready to supply any further detailed pleading which this Court deems necessary.

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen J. Bumgarner
Burr & Forman LLP
3400 Wachovia Tower
420 North 20th St.
Birmingham AL 35203

/s/ James D. Patterson
James D. Patterson
